JoNes, Judge,
concurring:
I concur in the result. I also concur in the reasoning by which that conclusion is reached.
I would add this further comment. I do not think the men who took these contracts had much choice in the light of the facts of record. This was a great new industry in which the country was vitally interested. Its development was fraught with risks and losses and called for daring as well as vision.
Postmaster General Brown was charged with the duty of letting the contracts. He sought broader authority than was finally given him. After studying the amended act he called in the representatives of the industry and told them-what he wanted done and also advised them that under a liberal construction of the act he thought he was authorized to pursue the method which he outlined.
Naturally they went along. What else could they do? They had their investments, as well as being responsible for the savings of many small investors who had faith in the future of aviation. It was what the responsible administra-, tor not only invited them to do, but even insisted be done. While they entered the agreement or combination to prevent competitive bidding with full knowledge that it was contrary to law, and this made the contracts subject to cancellation under Section 3950 of the Revised Statutes, their fault was not as great as if they had initiated the move.
There was no concealment. It was done openly. The meetings were held in the Department building. Press releases were issued.
*796 Postmaster General Brown was not justified in going to tbe lengths he did. He was the dominant type. He was struggling at the leash. In his enthusiasm and extermination he went beyond the limits of his authority.
Under the guise of extensions routes were let that by no reasonable construction could be classified as extensions. In this way actual route contracts were let without complying with the statutory requirement of competitive bidding. These contracts were ultra vires, in addition to being violative of section 3950, supra. These were all so interwoven as to give practically the entire set-up a false bottom, and there was-no practical place to draw the line.
For these reasons I think that Postmaster General Farley was thoroughly justified in cancelling these contracts and reletting them in accordance with the law. He was fully authorized to take this course. In thus removing any question of validity the further development of the industry was put on a more solid basis. Regardless of any question of collusion these contracts were properly cancelled.
The plaintiffs are entitled to recover compensation at the stipulated rate while the service was being rendered.